UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-cr-20409-KMM/LOUIS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CARLOS ADOLFO YEPES PATINO,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** comes before the Court upon Defendant Carlos Adolfo Yepes Patino's Motion to Dismiss Indictment Based on Violation of Speedy Trial Provisions of the Sixth Amendment to the United States Constitution and Fed. R. Crim. P. 48(b) (ECF No. 15). This Motion was referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable K. Michael Moore, Chief United States District Judge for the Southern District of Florida (ECF No. 18). Having reviewed the Motion to Dismiss, the Government's Response (ECF No. 21), Defendant's Reply (ECF No. 29), and being otherwise dully advised on the matter, the undersigned recommends that Defendant's Motion to Dismiss be **GRANTED** as follows.

**I.    BACKGROUND**[1]

Defendant is a life-long resident of Colombia, where he maintains bank accounts in his own name, pays Colombian taxes, and possess a valid driver's license bearing his name and

---

[1] Facts derived from Defendant's Motion to Dismiss (ECF No. 15) and the Government's Response (ECF No. 21) are not disputed within the Parties' respective pleadings.

address (ECF No. 15 at 3). On June 16, 2011, the Government filed a sealed indictment against Defendant, charging him with one count of conspiracy to launder money; six counts of laundering money in violation of Title 18, United States Code, Sections 1956(a)(l)(B)(i) and 2; and six counts of laundering money in violation of Title 18, United States Code, Sections 1957(a) and 2 (ECF No. 3). The charges arise from two money transactions that occurred in the Fall of 2010, in which Defendant is alleged to have worked with a cooperating source ("CS") to launder approximately $750,000.00 in cash (ECF No. 21 at 2). Rather than wire the funds from the second transaction as planned, law enforcement interceded and seized the $250,000.00 in funds (*id.*).

After the second transaction, Defendant arranged to meet the CS in Panama City, Panama, but was approached instead by law enforcement officers. Despite refusing to waive his *Miranda* rights, Defendant confessed to participating in the two transactions and knowing that the funds were derived from drug trafficking (*id.* at 3-4). Law enforcement officers sought Defendant's participation in future transactions as a cooperator; he agreed to do so if the Government completed the second transaction and released the seized funds, for which Defendant claimed he would be held accountable (*id.* at 3). The officers did not agree to release the funds but provided their phone numbers to Defendant and asked him to stay in touch when he returned to Colombia (*id.*). He did, initially; after two phone calls with law enforcement officers who again rejected his request that they complete the second wire transfer, Defendant disconnected his phone (*id.*). No efforts to locate him are described in the Government's Response.

On August 23, 2019, over eight years after the sealed indictment was filed, the Government filed an extradition request to the Country of Colombia (ECF No. 15 at 2). Defendant was subsequently arrested on or about September 26, 2019, in Colombia (*id.*). Defendant waived formal extradition proceedings in order to expedite his arrival to the United States (*id.* at 3). On

February 19, 2021, an Order to Unseal the Indictment was entered (ECF No. 7), and Defendant's initial appearance was held before the undersigned (ECF No. 8).

Twenty-eight days after his initial appearance, Defendant moved to dismiss the indictment against him based on the violation of the speedy trial provisions of the Sixth Amendment to the United States Constitution and Fed. R. Crim. P. 48(b) arising from the more than eight-year delay between the filing of the indictment against him and his arrest. In Response, the Government concedes that the length of the delay between the indictment and Defendant's arrest is "presumptively prejudicial," but it asserts that dismissal is improper because the delay was, under the circumstances, reasonable and Defendant has not been prejudiced (ECF No. 21). Defendant filed a Reply (ECF No. 29), requesting an evidentiary hearing. Because no fact asserted by the Government in its Response is disputed, and those facts are insufficient to meet the Government's burden on this Motion, this Recommendation follows without an evidentiary hearing.

## II. STANDARD OF REVIEW

"To determine whether a post-indictment delay violates the [D]efendant's constitutional right to a speedy trial, the Court must engage in an *ad hoc* 'balancing test, in which the conduct of both the prosecution and the defendant are weighed.'" *United States v. Ebanks*, No. 03-20954-CR, 2009 WL 2852737, at *3 (S.D. Fla. Sept. 2, 2009) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). In making such a determination, the Court is to consider the following four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. 514 at 530. However, should the length of delay not be "presumptively prejudicial," a court need not consider the remaining factors. *Doggett v. United States*, 505 U.S. 647, 651–52 (1992). "Courts generally consider delays exceeding one year to be

presumptively prejudicial." *Ebanks*, 2009 WL 2852737, at *3; s*ee also United States v. Ingram,* 446 F.3d 1332, 1336 (11th Cir. 2006).

"Nonetheless, the Supreme Court has recognized that a defendant generally cannot establish a Sixth Amendment speedy trial claim, however long the delay, if the Government pursued the prosecution with 'reasonable diligence,' and the defendant fails to show that the delay resulted in 'specific prejudice to his defense.'" *United States v. Harris*, 376 F.3d 1282, 1290 (11th Cir. 2004) (citing *Doggett*, 505 U.S. at 656). It is only where the first three factors weigh heavily against the Government that a defendant need not prove specific prejudice to succeed in showing a violation of his right to a speedy trial. *Ingram*, 446 F.3d at 1336.

### III. ANALYSIS

Defendant avers that the indictment should be dismissed because: "(i) the length of delay in the Government's attempt to apprehend the Defendant was wholly unreasonable; (ii) there is absolutely no justifiable reason for that delay; (iii) the Defendant is now appropriately and timely asserting his right to a speedy trial; and (iv) the Defendant has clearly been caused prejudice as a result of the delay" (ECF No. 15 at 2). The undersigned will address each of these factors in turn.

#### A. Length of Delay

Over eight years lapsed between the indictment and Defendant's arrest, and it has now been approximately ten years since the date of the indictment. Delays exceeding one year are generally found to be "presumptively prejudicial." *Doggett*, 505 U.S. at 652. Delay alone does not warrant dismissal of the indictment but rather constitutes the threshold requirement before the Court will consider the other *Barker* factors. In this case, the Government agrees that the delay "meets the threshold delay meriting analysis of the other three factors" (ECF No. 21 at 4). Indeed, the exceptional length of delay weighs against the Government. *United States v. Villarreal*, 613 F.3d

1344, 1351 (11th Cir. 2010); *United States v. Cadet*, 521 F. Supp. 2d 1351, 1355 (S.D. Fla. 2007); *United States v. Ospina*, 485 F. Supp. 2d 1357, 1360 (S.D. Fla. 2007).

### B. Reason for the Delay

Defendant contends that there was no reason for the delay between his indictment and his arrest. Rather, he claims that the Government made no effort to seek his extradition and showed no interest in him until August of 2019—more than eight years after his indictment (ECF No. 15 at 6). In Response, the Government explains that Defendant returned to Colombia after his single encounter with law enforcement on October 1, 2010, and has not contacted law enforcement since October 7, 2010; the Government argues based on these facts that "Defendant bears significant responsibility for causing the delay in this case" (*id*. at 5).

However, "[a] defendant has no duty to bring himself to trial; the Government has that duty" and as such, "the burden is on the prosecution to explain the cause of the pre-trial delay." *Ingram*, 446 F.3d at 1336 (citing *Barker*, 407 U.S. at 527; *United States v. Brown*, 169 F.3d 344, 349 (6th Cir.1999)). To meet this burden, the Government must demonstrate it pursued the defendant "with reasonable diligence from his indictment to his arrest." *United States v. Resnik*, No. 92-00394-CR, 2014 WL 1463469, at *3 (S.D. Fla. Apr. 14, 2014) (citing *Doggett*, 505 U.S. at 656).

By contrast, where a defendant "intentionally evades the Government's efforts to bring him to trial," he is culpable in causing the delay. *Ingram*, 446 F.3d at 1337. In *Ingram,* the Government raised a similar explanation for the delay between defendant's indictment and arrest, alleging that defendant's phone number was no longer valid and he did not return law enforcement's messages. *Id*. at 1338. There, the Court found that such proffers did not support a finding that defendant

5

"intended to invade arrest, particularly where there is no evidence [defendant] was cognizant of the pending charges." *Id.*

Here too, there is no evidence that Defendant even knew of the sealed indictment or that his lack of contact with law enforcement was an attempt to evade arrest after his single encounter with law enforcement officers in Panama. Critically, the Government offers no correlation between the Defendant's action—cessation of voluntary pre-indictment cooperation—and the delay in requesting his extradition. There are no factual assertions of efforts made by the Government to locate Defendant, nor argument even that its efforts were thwarted by Defendant's return to his home country or disconnection of his phone. As the Court noted in *Ingram*, "[t]here are many innocent reasons why someone's phone numbers might change." *Id.* at 1338. Defendant's actions of maintaining bank accounts in his name, maintaining a valid driver's license bearing his home address, paying taxes, and traveling with a valid passport are all uncontested by the Government's Response and demonstrate that Defendant was not attempting to conceal his location; as does the fact that Defendant was arrested only a month after a request for his extradition was filed. Where a defendant has lived abroad for much of the period encompassing the pretrial delay, the Government's reasonable diligence may be shown through extradition. *Resnik*, 2014 WL 1463469 at *3. Yet here, the request for extradition came a full eight years after indictment and fails to demonstrate reasonable diligence by the Government.

The Government lastly states that it "*initially* elected [to] delay the arrest" to protect the identity of a law enforcement cooperator who had met with Defendant, and who was still working proactively (ECF No. 21 at 5) (emphasis added). However, the Government provides no information or details as to how the delay between the indictment and Defendant's arrest protected the cooperator's identity, which was already known to Defendant, nor does the Government state

6

when the cooperator ceased working. The Government also fails to address alternative measures that could have been taken to protect the cooperator's identity, or to cite any case law to support this proffer as a valid reason for a more than eight-year delay. The Government's reliance on *United States v. Hayes*, 40 F.3d 362 (11th Cir. 1994) is misplaced; though the court there accepted the strategic need to maintain the indictment under seal while the Government was actively searching for the eluding co-defendant, the Government's efforts to prosecute the defendant during the period of delay were "persistent and documented." *Id.* at 366. The Government's vague invocation of its "initial" decision to delay arrest to protect the CS's identity will not carry its burden here. As such, the undersigned finds this factor to weigh heavily against the Government.

### C. Defendant's Assertion of His Right to Speedy Trial

Defendant claims that he timely and diligently asserted his right to a speedy trial approximately 28 days after his initial appearance (ECF No 15 at 6-7). In Response, the Government only states that this factor does not weigh against it because "Defendant was aware of the potential charges being brought against him" (ECF No. 21 at 5).[2]

Presumably, the Government rests this proffer based on the singular interaction that Defendant had with law enforcement officers on October 1, 2010, which is described in the Government's Response; even generously construing the facts proffered by the Government and assuming their truth, there is no indication that the officers even advised Defendant of the possibility that he would be charged. The Government proffers only that the officers showed Defendant evidence of his communications in arranging the money pick-ups, that he confessed to his involvement, that the officers solicited his agreement to act as a confidential source for future transactions, and that he declined when they refused to complete the money transaction for which

---

[2] On similar facts, the Government has simply conceded that a motion to dismiss upon arrest amounts to a timely assertion of a defendant's right to a speedy trial. *Ospina*, 485 F. Supp. 2d at 1360.

he stated he would be held responsible. The Government's conclusory assertion that Defendant was aware of the charges and that this supports a suggestion that he concealed himself is unsubstantiated by the facts the Government has advanced in opposition to this Motion.

The indictment was not unsealed until February 19, 2021 (ECF No. 7), and there is no evidence—no suggestion even—that Defendant was aware of the indictment during the period of delay. Moreover, Defendant was not even represented by counsel until his initial appearance before me on February 19, 2021. A defendant "is not expected to raise his right to a speedy trial without the assistance of counsel." *Ebanks*, 2009 WL 2852737, at *5 (finding this factor to weigh in defendant's favor where defendant raised his right to a speedy trial 28 days after his initial appearance at which counsel was appointed); *see also United States v. Duke*, No. 4:11-CR-004-01-HLM, 2011 WL 1833213, at *3 (N.D. Ga. May 12, 2011) (finding that"[t]he third factor (i.e., whether the defendant asserted his right to a speedy trial) weighs heavily against the Government, as defendant asserted his right . . . one month after the Court appointed him counsel upon his initial appearance"). Because Defendant asserted his right to a speedy trial by way of the instant Motion roughly one month after his initial appearance, the undersigned finds this factor weighs heavily against the Government.

### D. Prejudice

The first three factors weigh heavily against the Government, and as such, Defendant need not prove specific prejudice. *See Ebanks*, 2009 WL 2852737, at *6 (finding "the defendant is not required to show actual prejudice under the facts of the instant case because the first three factors weigh heavily against the [G]overnment" and granting the motion to dismiss); *Ingram*, 446 F.3d at 1336 (finding that because the first three factors all weighed heavily against the Government, defendant "need not demonstrate actual prejudice resulting from the delay" and the "indictment

must be dismissed"). Notwithstanding, Defendant proffers—again, without contradiction from the Government—that the passage of time has resulted in the destruction of evidence including bank records, cellphone records, and credit card records. In Response, the Government proffers only that the evidence *it* would use to prove the crime still exists, in the form of recorded calls and inculpatory emails; this utterly misses the prejudice to Defendant's ability to prepare his *defense*. Though prejudice should be presumed, here, it weighs against the Government as well.

## IV. RECOMMENDATION

For the forgoing reasons it is **RECOMMENDED** that Defendant's Motion to Dismiss Indictment Based on Violation of Speedy Trial Provisions of the Sixth Amendment to the United States Constitution and Fed. R. Crim. P. 48(b) (ECF No. 15) be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days to serve and file written objections, if any, with the Honorable K. Michael Moore, Chief United States District Judge for the Southern District of Florida. Failure to file objections by that date shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 31st day of May, 2021.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE